UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                   Case No. 17-cr-20443

v.                                      Honorable Thomas L. Ludington

JAMES DANIEL BENNETT,

        Defendant.
_____/

**ORDER DENYING MOTION TO EXCLUDE AUDIO EVIDENCE, EXPERT TESTIMONY, AND EVIDENCE OF PRIOR CONVICTONS**

On July 28, 2017, an indictment was returned which charged Defendant James Daniel Bennett with one count of domestic assault by an habitual offender. ECF No. 1. On August 28, 2017, Bennett filed two motions. In Bennett's first motion, he seeks an order excluding a number of audio tape recordings, testimony of the Government's expert on domestic violence, and all evidence of Bennett's prior domestic violence convictions. ECF No. 12. In the second motion, Bennett requests disclosure of the complaining witness's grand jury testimony. ECF No. 13. On September 27, 2017, the Court held a hearing on Bennett's motion for exclusion and discovery. For the following reasons, the motion will be denied.

**I.**

In the indictment, Bennett is charged with one count of domestic assault by an habitual offender. ECF No. 1. Specifically, the indictment alleges that "[o]n or about April 30, 2017, . . . James Daniel Bennett assaulted T.C., a person he has cohabited with as someone similarly situated to a spouse after having convicted of Domestic Violence in the Barry County District Court on or

about November 19, 1998 and Domestic Violence in the Isabella County Trial Court on or about June 26, 2000, both of which involved a victim that was a spouse or intimate partner." *Id.* at 1.

On July 19, 2017, the Government filed a discovery notice on the docket. ECF No. 10. In the notice, the Government indicated that at trial it will seek admission of audio recordings of the alleged victim talking to police and judgments of Bennett's prior domestic violence convictions. *Id.* at 2. The Government further advised that it intends to introduce a domestic violence expert, Holly Rosen, at trial.

**II.**

In the present motion, Bennett argues that "[a]ll evidence of James Bennett's prior domestic violence convictions must be excluded as irrelevant to this case." Mot. Exclude at 2, ECF No. 12. He further argues that the audio tapes of the alleged victim's interviews with the police must be excluded because they are unintelligible. *Id.* at 1–2. Finally, Bennett argues that the Government's proposed expert on domestic violence must be prevented from testifying at trial. All three requests will be denied. Bennett also requests discovery from the Government, but he does not contend that the Government has failed to comply with any legal obligations regarding discovery, and so the Court will not issue a redundant order directing the Government to comply with the law.

**A.**

First, Bennett argues that all evidence of his prior convictions must be excluded as irrelevant. Bennett is charged under 18 U.S.C. § 117. Accordingly, the Government must prove that Bennett 1) committed a domestic assault, 2) did so within the special maritime and territorial jurisdiction of the United States or Indiana county, and 3) has "a final conviction on at least 2 separate prior occasions . . . for offenses that would be, if subject to Federal jurisdiction . . . any

assault, sexual abuse, or serious violence felony against a spouse or intimate partner." *Id.* at § 117(a)(1). Bennett's prior domestic violence convictions are thus elements of the charged crime. Thus, those prior convictions are admissible. *See United States v. Drapeau*, 827 F.3d 773, 776 (8th Cir. 2016) (holding that the district court did not abuse its discretion in permitting testimony regarding the details of prior offenses because the defendant did not stipulate that his prior convictions constituted predicate offenses and because the district court gave curative instructions to the jury).

**B.**

Next, Bennett requests an order excluding certain audio of interviews given by the complaining witness to the 911 operator and police officers. "[T]he admission of tape recordings at trial rests within the sound discretion of the trial court. *United States v. Robinson*, 707 F.2d 872, 876 (6th Cir. 1983). To be admitted, "the tapes must be authentic, accurate and trustworthy." *Id.* Further, the tapes "must be audible and sufficiently comprehensible for the jury to consider the contents." *Id.* However, "[t]he fact that a tape recording has some unintelligible portions does not automatically render the entire recording inadmissible." *United States v. Wilkinson*, 53 F.3d 757, 761 (6th Cir. 1995). Rather, a partially unintelligible tape is inadmissible "if the 'unintelligible portions are so substantial as to render the recording as a whole untrustworthy.'" *Robinson*, 707 F.2d at 876 (quoting *United States v. Jones*, 540 F.2d 465, 470 (10th Cir. 1976)).

In this matter, the Court reviewed the intelligibility of the recordings at the hearing. As indicated on the record, the Court is satisfied that the jury will be able to understand that record and that any potentially unintelligible portions do not call into question the trustworthiness of the recording as a whole.

Alternatively, the Government has indicated its intention to provide a transcript of the audio recording to the jury. "The use of transcripts is also a matter commended to the trial court's discretion." *Id.* The "preferred practice is not to submit transcripts to the jury unless the parties stipulate to their accuracy." *Id.* When that is not possible, the second best method is for the district court to compare the transcript and recording and make a pretrial determination of accuracy. *Id.* As a last resort, the Government's transcript and Defendant's transcript can both be submitted to the jury. *Id.* Bennett has not indicated whether he intends to stipulate to a transcript of the recording in question, assuming it is found admissible.[1]

## C.

Finally, Bennett moves to exclude the Government's expert witness on domestic violence, Holly Rosen. Bennett argues that the proposed expert testimony is "within the understanding of the average jury" and thus would not be helpful to the jury. He further argues that "[t]he effect of the testimony will be that in the expert's opinion Defendant is guilty because the dynamics described by the expert satisfy the major issue in the case." He finally argues that the testimony will be more prejudicial than probative and thus inadmissible pursuant to Federal Rule of Evidence 403.

According to Federal Rule of Evidence 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[1] In its brief, the Government argues at length that the complaining witness's statements to police would fall under exceptions to the hearsay rule. Bennett has not argued that the statements in question should be excluded on that basis, so the Government's arguments on that issue will not be addressed.

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial court must consider proffered expert testimony by making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). Thus, proffered expert testimony is admissible only if it is reliable and relevant. *Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000).

Rather than analyzing the witness's qualifications in the abstract, the trial court must determine whether the witness's "qualifications provide a foundation for [the] witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). The trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Expert testimony is admissible if the subject matter is "'beyond the understanding of the average layman.'" *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) (quoting *United States v. Pearce*, 912 F.2d 159, 163 (6th Cir.1990)). *See also United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) ("Properly qualified expert testimony is generally admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue.") (citations omitted).

Importantly, expert testimony need not be limited only to scientific and technical knowledge. Rule 702 Advisory Comm. Notes. Rather, it can include specialized but nontechnical subject matter. *Id.* As the Advisory Committee for Rule 702 explains:

> Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.

*Id.*

Ms. Rosen has repeatedly testified in domestic violence prosecutions before this Court. Her testimony is meant to articulate for the jury the complexity of relationships involving domestic violence and why the victims of domestic violence can behave in counterintuitive ways. According to the Sixth Circuit: "An overwhelming number of federal courts accept that the dual phenomenon of battered woman's syndrome and victim recantation are beyond the knowledge of an average juror, and therefore allow expert witnesses to offer testimony in such cases." *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017). Given the national consensus that expert testimony of the kind Ms. Rosen provides is helpful for juries in domestic violence cases involving victim recantation, Bennett's motion to exclude her testimony will be denied.[2]

**III.**

Accordingly, it is **ORDERED** that Defendant Bennett's motion to exclude evidence and for additional discovery is **DENIED.**

---

[2] For effectively the same reasons, Bennett's argument that Ms. Rosen's testimony is unduly prejudicial has no merit. Ms. Rosen's expert testimony will aid the jury in understanding the common characteristics of a relationship involving domestic violence. Any prejudice that may result from her testimony will not outweigh its probative value.

It is further **ORDERED** that the Scheduling Order is **AMENDED** as follows:

**Plea Deadline:** October 12, 2017

**Final Pretrial Conference:** October 12, 2017, at 2:30 p.m.

**Jury Trial:** October 24, 2017, at 8:30 a.m.

Dated: October 10, 2017

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 10, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager